## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MEDIA LODGE, INC., | ) | Case No. 20-12969 (JTD) |
| | ) | |
| Media Lodge. | ) | |
| | ) | |
| | ) | |
| MEDIA LODGE, INC., | ) | Adv. Pro. 21-50246 (JTD) |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| GUNUP HOLDING, INC. D/B/A GUNUP, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| GUNUP HOLDING, INC. D/B/A GUNUP, INC., | ) | |
| | ) | |
| Counterclaim Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| MEDIA LODGE, INC., | ) | |
| | ) | |
| Counterclaim Defendant. | ) | |
| | ) | |
| GUNUP HOLDING, INC. D/B/A GUNUP, INC., | ) | |
| Third-Party Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| GEMINI DIRECT, LLC, | ) | |
| | ) | |
| Third-Party Defendant. | ) | |
| | ) | |

## MEDIA LODGE, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
## FOR JUDGMENT ON THE PLEADINGS AND TO DISMISS
## GUNUP, INC.'S COUNTERCLAIM

Dated: June 7, 2021

GELLERT SCALI BUSENKELL & BROWN, LLC

/s/ *Michael G. Busenkell*

Michael G. Busenkell (DE 3933)
Ronald S. Gellert (DE 4259)
Bradley P. Lehman (DE 5921)
1201 N. Orange Street, Suite 300
Wilmington, DE 19801
Telephone: (302) 425-5812
Facsimile: (302) 425-5814
mbusenkell@gsbblaw.com
rgellert@gsbblaw.com
blehman@gsbblaw.com

**<u>TABLE OF CONTENTS</u>**

I.    INTRODUCTION AND SUMMARY ................................................................... 1

II.   STATEMENT OF FACTS ................................................................................... 1

  (A)    The Merger and Washington Action ............................................................... 1

  (B)    This Bankruptcy Case and Adversary Action ................................................. 5

III.    ARGUMENT ...................................................................................................... 6

  (A)    Plaintiff is Entitled to Judgment on the Pleadings ......................................... 6

  (B)    GunUp's Counterclaim Against Media Lodge Must be Dismissed ................................ 8

IV.   CONCLUSION .................................................................................................. 10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Autobacs Strauss, Inc. v. Autobacs Seven Co. (In re Autobacs Strauss, Inc.)*,
473 B.R. 525 (Bankr. D. Del. 2012) .........................................................................8

*Baldwin-United Corp. v. Adams*,
52 B.R. 539 (Bankr. S.D. Ohio 1985).......................................................................7

*Frankun v. Int'l Wireless Communs. Hldgs., Inc. (In re Int'l Wireless Communs.*
*Hldgs., Inc.)*,
68 F. App'x 275 (3d Cir. 2003) ................................................................................7

*Gaske v. Satellite Rests. Inc. (In re Satellite Rests. Inc.)*,
2021 Bankr. LEXIS 652 (Bankr. D. Md. Mar. 19, 2021).......................................9

*Liquidating Tr. of U.S. Wireless Corp. v. Wax (In re U.S. Wireless Corp.)*,
384 B.R. 713 (Bankr. D. Del. 2008) .........................................................................8

*Wolfington v. Reconstructive Orthopaedic Assocs. II PC*,
935 F.3d 187 (3d Cir. 2019)......................................................................................6

**Statutes**

11 U.S.C. § 510(b) ..............................................................................................6, 7, 8, 10

11 U.S.C. §§ 1192 and 523(a)(19).......................................................................................8

Bankruptcy Code Section 101(43)........................................................................................7

Bankruptcy Code title 11 chapter 11 ...............................................................................1, 5

RCW 21.20.430(1), (3) ........................................................................................................4

State Securities Act ..............................................................................................................3

State Securities Act, RCW 21.20.010(2) .........................................................................3, 4

WSSA ...........................................................................................................................3, 4, 5

**Rules**

Federal Rules of Bankruptcy Procedure Rule 7026....................................................................1

Federal Rules of Civil Procedure Rule 12(b)(6) ...............................................................1, 8, 10

Federal Rules of Civil Procedure Rule Rule 12(c) ..................................................................11, 10

# I. INTRODUCTION AND SUMMARY

Media Lodge, Inc. ("Media Lodge" or "Plaintiff"), as plaintiff in this adversary action and debtor and debtor-in-possession in this chapter 11 case, submits this Memorandum of Law in support of its Motion, pursuant to Rule 12(c) and 12(b)(6) of the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable hereto by Rule 7026 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Motion seeks judgment on the pleadings in favor of Plaintiff on its claims against GunUp Holding, Inc. d/b/a GunUp, Inc. ("GunUp"), as set forth in Plaintiff's Second Amended Complaint (the "Complaint") filed on April 16, 2021 [D.I. 5], and to dismiss GunUp's counterclaim against Plaintiff.

# II. STATEMENT OF FACTS

Media Lodge is an advertising brokerage. Website owners contract with Media Lodge to sell advertising space on their websites and related media. In exchange, Media Lodge remits a share of the advertising revenue. In large part, the advertisements are in the form of banner advertisements—ads in the form of images, email ads and video ads generally 15 to 30 seconds in length.

Media Lodge was created in 2014 to manage the sale of advertising on GunBroker.com, and it has the exclusive right to sell advertising on that website. Media Lodge and GunBroker.com are sister companies; GunBroker.com is owned by IA Tech, LLC ("IA Tech"), and, before the merger with GunUp, IA Tech was also Media Lodge's sole owner. GunBroker.com is the world's largest online-auction website for firearms and hunting and shooting gear. Until 2015, Media Lodge placed advertisements only on GunBroker.com.

## (A) The Merger and Washington Action

In late 2014, Media Lodge sought to expand advertising beyond GunBroker.com and began

discussing a merger with GunUp Publishing Inc., which ran a similar business. The parties ultimately agreed on a transaction in which GunUp Publishing Inc. would merge with Media Lodge. On or about March 31, 2015, Media Lodge purchased GunUp Publishing Inc. with a mixture of cash and stock in Media Lodge pursuant to that certain Agreement of Merger and Plan of Reorganization by and among Media Lodge, MLA Acquisition Corp., GunUp and GunUp Publishing Inc. (the "Merger Agreement"). A true and correct copy of the Merger Agreement is attached to Plaintiff's Complaint as Exhibit A.

Pursuant to the Merger Agreement, GunUp was contributing all of the equity interests in GunUp Publishing Inc. In exchange, GunUp was to receive $1 million in cash and 845,986 shares of common stock in Media Lodge. The consideration to be paid to GunUp was based on Media Lodge being valued at $38.25 million and shares of GunUp Publishing Inc. being valued at $4 million in the aggregate. The common stock to be transferred under the Merger Agreement would have resulted in GunUp owning 7.8% of Media Lodge.

GunUp was to receive the consideration in stages. The stock consideration was to be paid in the form of: (i) 281,996 shares on the Closing Date; (ii) 281,995 shares on September 15, 2016; and (iii) 281,995 shares on March 15, 2018. The cash consideration was to be paid as follows: (i) on the Closing Date, $300,000, less the amount of certain outstanding liabilities; (ii) $200,000 on July 1, 2015; (iii) $250,000 on May 15, 2016; and (iv) $250,000 on May 15, 2017. In 2015, Media Lodge made the first two cash payments to GunUp totaling $500,000.

Media Lodge subsequently determined that the value of GunUp's assets was far less than what GunUp represented them to be and that GunUp had made a number of other material misrepresentations regarding its operations. As a result, Media Lodge did not make the payment which would have been due on May 15, 2016, and Media Lodge did not make any of the remaining

transfers of cash or common stock to GunUp.

On June 23, 2016, GunUp commenced an action in the Superior Court for the State of Washington, in and for the County of King, styled *GunUp, Inc. v. Media Lodge, Inc., et al., Case No. 16-2-15005-5 SEA*, against, among others, Media Lodge, seeking rescissory damages arising from the securities transaction reflected by the Merger Agreement (the "<u>Washington Action</u>"). A true and correct copy of GunUp's complaint in the Washington Action (the "<u>GunUp Complaint</u>") is attached to Plaintiff's Complaint as Exhibit B.

On October 23, 2016, GunUp subsequently amended the complaint in the Washington Action to add claims under the Washington State Securities Act ("<u>WSSA</u>") against Media Lodge, as well as to add IA Tech, Susan Lokey, and then-directors Jeff Siegel ("<u>Siegel</u>"), Steve Urvan, and Kevin O'Connell as additional defendants.[1] Media Lodge also asserted counterclaims against GunUp and third-party claims against GunUp's director, Daniel M. Hall. On August 17, 2018, all parties filed motions for summary judgment seeking affirmative judgments in their favor on claims each party asserted and seeking judgments in their favor on claims asserted against them.

Specifically, with respect to Media Lodge, GunUp requested a judgment that Media Lodge and Siegel had violated the WSSA and that GunUp was entitled to rescission of the Merger Agreement. On October 29, 2018, the Washington trial court issued an order granting GunUp's and Hall's motions for summary judgment and denying Media Lodge's and Siegel's summary judgment motions (the "<u>Summary Judgment Order</u>"). A true and correct copy of the Summary Judgment Order is attached to Plaintiff's Complaint as Exhibit C.

In the Summary Judgment Order, the Washington trial court found that "[a]s a matter of law, Media Lodge and Mr. Siegel are liable to GunUp for violating the Washington State Securities

---

[1] The claims against IA Tech and Ms. Lokey were dismissed without prejudice for lack of personal jurisdiction.

Act ("WSSA"), RCW 21.20.010(2), and RCW 21.20.430(1), (3)."  See, Exhibit C to the Complaint, F.2.  The Washington trial court further found that "[a]s a matter of law, Media Lodge breached the merger agreement at issue in this case (the "Agreement") by failing to make the May 15, 2016 and May 15, 2017 cash payments and the September 15, 2016 and March 15, 2018 stock transfers required by Section 1.06 of the Agreement."  See id., F.3.

Following a subsequent trial held for the purpose of valuing GunUp's rescissory damages arising from its purchase of Media Lodge securities pursuant to the Merger Agreement and Media Lodge's alleged violations of Washington securities law, GunUp obtained a judgment against Media Lodge and Siegel in the amount of $1,240,852, along with $1,094,589.71 in attorney's fees and $138,956.13 in costs in a supplemental judgment.  Including accrued interest, the Washington trial court entered a final judgment in the amount of $2,478,990.77 (with additional interest and costs, the "Judgment").  A true and correct copy of the Judgment is attached to the Complaint as Exhibit D.

The Judgment provides that "[j]udgment is entered for GunUp and against Media Lodge and Mr. Siegel on GunUp's claims that Media Lodge and Mr. Siegel violated the Washington State Securities Act.  RCW 21.20.010(2) and RCW 21.20.430(1), (3)."  See Judgment 1(a)(i). Underlying the Judgment was the Washington Court's findings of facts and conclusions of law dated July 8, 2019 (the "FFCL").  A true and correct copy of the FFCL is attached to the Complaint as Exhibit E.  In the FFCL, the Washington Court noted that "[t]he only issues remaining for trial concerned GunUp's recessionary [sic] remedy under the WSSA."  See, FFCL at 2.  The Washington Court determined that "GunUp is entitled to recessionary [sic] relief for Media Lodge's and Mr. Siegel's WSSA violations…."  See, FCCL at 19.  With the Washington Court having determined that GunUp was entitled to rescissory damages in connection with its purchase

of Media Lodge stock under the Merger Agreement, the Judgment further provides that "Judgment is entered for GunUp and against Media Lodge on GunUp's claim that Media Lodge breached the parties' merger agreement."   See Judgment 1(a)(ii).

The Judgment represents the alleged value of GunUp's alleged interest in Media Lodge, to which it alleged it is entitled to in the Washington Action in the form of damages for rescission in connection with GunUp's acquisition of equity interests in Media Lodge.  Media Lodge and Siegel timely appealed the Judgment to the Court of Appeals, Division I of the State of Washington, Case No. 80766-8 (the "Appeal"), which challenged the trial court's entry of summary judgment on the WSSA claims as well as the court's calculation of the Judgment.

On March 4, 2021, GunUp filed its corrected answering brief (the "GunUp Brief") in the Appeal, in which GunUp refers to its award of damages as damages for rescission.  A true and correct copy of the GunUp Brief is attached to the Complaint as Exhibit F.  GunUp acknowledges at page 4 of the GunUp Brief that the damages awarded to it by the Washington Court were for rescission ("The trial court did not err in entering findings of fact 88 and 101 or in awarding damages for rescission.")

### (B) This Bankruptcy Case and Adversary Action

On November 10, 2020 (the "Petition Date"), Media Lodge filed a voluntary petition for relief under chapter 11 of title 11 of the Bankruptcy Code.  On January 11, 2021, GunUp filed proof of claim 3-1 in Media Lodge's chapter 11 proceeding (the "GunUp Claim").  The GunUp Claim arises solely from the Judgment and asserts a general unsecured claim in the amount of $2,673,883.59.  The GunUp Claim asserts as its basis the "Judgment entered against Media Lodge, Inc. in favor of GunUp, Inc."  GunUp holds no other claim against Media Lodge.

Media Lodge instituted the instant adversary action against GunUp on March 15, 2021, and the operative Complaint was filed on April 16, 2021. On May 17, 2021, GunUp filed its Answer to Amended Complaint [D.I. 7], including a counterclaim for nondischargeability against Media Lodge (the "Counterclaim") and third-party claims against SpeedLight Group I, LLC ("SpeedLight"). On May 28, 2021, GunUp filed an amended answer (the "Answer") [D.I. 12] which asserted the same Counterclaim but asserted third-party claims against Gemini Direct, LLC ("Gemini") rather than against SpeedLight.

## III. ARGUMENT

### (A) Plaintiff is Entitled to Judgment on the Pleadings

Plaintiff seeks judgment on the pleadings in its favor with respect to Count I of the Complaint, which seeks subordination of the GunUp Claim pursuant to 11 U.S.C. § 510(b).

> A motion for judgment on the pleadings under Rule 12(c) is analyzed under the same standards that apply to a Rule 12(b)(6) motion. Consequently, the court must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party, and may not grant the motion unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law. Thus, in deciding a motion for judgment on the pleadings, a court may only consider the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.

*Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019).

Judgment on the pleadings is warranted here because no material issues of fact remain to be resolved, and the admissions contained in GunUp's Answer make clear that the Court can now resolve Plaintiff's subordination claim as a straightforward matter of law.

As set forth in the Complaint, the essential nature of the Merger Agreement is that GunUp sold its stock in GunUp Publishing Inc. to Media Lodge in exchange for cash and Media Lodge common stock. See Complaint, ¶ 33. The GunUp claim arises from the purchase of a security; namely, the sale of GunUp Publishing Inc.'s common stock and the purchase of Media Lodge's

(the Debtor) common stock.  Id. at ¶ 34.  GunUp admits that the Judgment and the GunUp Claim arise from the purchase or sale of a security.  See Answer at ¶ 34-37.  GunUp further admits that it sought rescissory damages in the Washington Action arising from the purchase or sale of a security.  Id. at ¶ 17.

Section 510(b) of the Bankruptcy Code specifically provides:

For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security…shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.

11 U.S.C.§ 510(b).  While GunUp admits that the Complaint accurately quotes Section 510(b), GunUp denies that the GunUp Claim should be subordinated pursuant to that section.  However, the basis for the relief requested in Count I of the Complaint is well-established in the Third Circuit.

As the U.S. Court of Appeals for the Third Circuit has explained:

When persons purchase shares of stock in a corporation that files for bankruptcy, their shares come last in bankruptcy's payout priority.  Conversely, creditors of the corporation come first.  Similarly, when persons bring claims arising from the purchase or sale of a corporation's stock, and the corporation subsequently files for bankruptcy, those claims also are behind creditors' claims.  Does this outcome change when persons who, as part of their consideration when selling a security, get shares in an entity that files for bankruptcy?  The obvious answer is no.

Frankun v. Int'l Wireless Communs. Hldgs., Inc. (In re Int'l Wireless Communs. Hldgs., Inc.), 68 F. App'x 275, 276 (3d Cir. 2003).  "Section 101(43) of the Bankruptcy Code defines 'purchaser' as a 'transferee of a voluntary transfer . . . [or] immediate or mediate transferee of such a transferee.'… See Baldwin-United Corp. v. Adams, 52 B.R. 539, 540 n.1 (Bankr. S.D. Ohio 1985) (stating that stock received as consideration is purchased for § 510(b) purposes)."  Id. at 277.  In addition to applying when a party receives stock as consideration for selling a security, this Court has also held that Section 510(b) applies more broadly to other situations such as where an

employee is granted stock as part of a compensation package. "[C]ourts interpreting section 510(b) have read the term 'purchase' broadly and have included within its scope grants of stock and stock options as compensation." *Liquidating Tr. of U.S. Wireless Corp. v. Wax (In re U.S. Wireless Corp.)*, 384 B.R. 713, 718 (Bankr. D. Del. 2008).

Accordingly, it is clear in this case that the GunUp Claim is firmly within the ambit of Section 510(b), as GunUp is the purchaser of a security of the debtor or affiliate of the debtor, and the GunUp Claim indisputably arises from damages sought in connection with that transaction. Because the security at issue here is Media Lodge common stock, the GunUp Claim must be subordinated to the same priority as common stock for purposes of distributions in this case. Media Lodge therefore requests that the Court award judgment on the pleadings in its favor with respect to its subordination claim set forth in Count I of the Complaint.

**(B) GunUp's Counterclaim Against Media Lodge Must be Dismissed**

By this Motion, Media Lodge also seeks dismissal of GunUp's counterclaim for nondischargeability with prejudice pursuant to Federal Rule 12(b)(6). As this Court has recognized:

> The standard governing a motion under Rule 12(b)(6) is well known. Such motion serves to test the sufficiency of the factual allegations in the plaintiff's complaint. The Third Circuit has guided lower courts to accept the complaint's well-pleaded facts as true and allows lower courts to disregard legal conclusions. This Court must determine whether the facts alleged suffice to show a plausible claim for relief. The question is not whether plaintiffs' claims will ultimately succeed on their merits, but whether the facts as pled are sufficient to warrant discovery, viewed in the light most favorable to the non-moving party.

*Autobacs Strauss, Inc. v. Autobacs Seven Co. (In re Autobacs Strauss, Inc.)*, 473 B.R. 525, 551-52 (Bankr. D. Del. 2012). By way of a counterclaim against Media Lodge in its Answer, GunUp seeks a declaration that the GunUp Claim is nondischargeable pursuant to 11 U.S.C. §§ 1192 and

523(a)(19). As a matter of law, GunUp's counterclaim must fail even if the allegations in support of the counterclaim are accepted as true, and it should therefore be dismissed with prejudice.

In relying on Section 523(a) for the premise that the GunUp Claim is nondischargeable, GunUp selectively quotes that section in a manner that masks the limited scope of its applicability. The first line of Section 523(a) states: "A discharge under section 727, 1141, 1192 [1] 1228(a), 1228(b), or 1328(b) of this title does not discharge **an individual debtor** from any debt…." (Emphasis added). The "individual debtor" language was omitted in GunUp's quotation of Section 523(a).

Fatal to GunUp's counterclaim is the fact that "the discharge exceptions in Section 523(a) apply only to individual Subchapter V debtors." *Gaske v. Satellite Rests. Inc. (In re Satellite Rests. Inc.)*, 2021 Bankr. LEXIS 652, at *2 (Bankr. D. Md. Mar. 19, 2021) (granting motion to dismiss nondischargeability complaint brought against the debtor-defendant under Section 523(a)). The *Gaske* Court further explained:

> The language of Section 523(a) is clear and unambiguous that it applies only to individual debtors. The plain language of Section 523(a) contradicts the Plaintiffs' interpretation of the statute. Moreover, the reference to Section 1192 added to Section 523(a) by the SBRA must be given meaning, and the only reasonable meaning is that Congress intended to continue to limit application of the Section 523(a) exceptions in a Subchapter V case to individuals.

2021 Bankr. LEXIS 652, at *9. "A corporate debtor is not an individual debtor for the purposes of Section 523." *Id*. at *10. (quoting *In re Spring Valley Farms, Inc.*, 863 F.2d 832, 834 (11th Cir. 1989)).

In this case, it is undisputed that Media Lodge is a corporate debtor and not an individual one. Accordingly, the discharge exceptions contained in Section 523(a), including subsection (a)(19) which forms the basis of GunUp's counterclaim, do not apply in this case. GunUp's

counterclaim against Media Lodge fails as a matter of law and should be dismissed with prejudice pursuant to Federal Rule 12(b)(6).

## IV.    CONCLUSION

For all of the foregoing reasons and such other reasons as may be put forth at any hearing on the Motion, Media Lodge respectfully requests that this Court enter an order:

(1)    Granting judgment on the pleadings pursuant to Federal Rule 12(c) in favor of Media Lodge and against GunUp, subordinating the GunUp Claim to the same priority as common stock pursuant to 11 U.S.C. § 510(b); and

(2)    Dismissing GunUp's nondischargeability counterclaim against Media Lodge with prejudice pursuant to Rule 12(b)(6).

Dated: June 7, 2021          GELLERT SCALI BUSENKELL & BROWN, LLC

*/s/ Michael G. Busenkell*
Michael G. Busenkell (DE 3933)
Ronald S. Gellert (DE 4259)
Bradley P. Lehman (DE 5921)
1201 N. Orange Street, Suite 300
Wilmington, DE 19801
Telephone: (302) 425-5812
Facsimile: (302) 425-5814
mbusenkell@gsbblaw.com
rgellert@gsbblaw.com
blehman@gsbblaw.com